**Brian IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Brian Kane, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.:1:17-cv-2266 |
| | ) |
| Finance of America Mortgage, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff Brian Kane ("Brian"), for his Complaint against Finance of America Mortgage,

LLC. ("Finance of America"), alleges and states as follows:

## SUMMARY OF ACTION

1.      Brian brings this action pursuant to Title VII of the Civil Rights Act of 1964, as

amended.   42 U.S.C. § 2000e *et seq*., to remedy acts of employment discrimination, and

retaliation perpetrated against him by Finance of America.   Kane contends that Finance of

America officials discriminated against him, a Caucasian American, based on his race by

terminating his employment based solely upon remarks he made on social media criticizing the

group Black Lives Matter ("BLM") while similarly situated African-American employees who

made comparable remarks were permitted to continue their employment without retribution.

2.      Brian further asserts that management retaliated against him for having

complained about such discrimination, created a hostile working environment for him, caused

him to suffer major depression, and finally, terminated his employment.

3.      Brian has suffered, and continues to suffer, damages because Finance of America's discrimination, reprisal, hostile work environment, and refusal to rectify the situation.

## PARTIES

4.      Plaintiff Brian Kane is a resident of Indianapolis, Marion County, Indiana, and was an employee of Finance of America from May 2014 to August 2016.

5.      Defendant Finance of America is a Delaware limited liability company with its principal place of business in Tulsa, Oklahoma.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, since the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*.

7.      This Court also maintains subject matter jurisdiction under 28 U.S.C. Section 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8.      Venue is proper under 28 U.S.C. § 1391 because all or a substantial part of the cause of action occurred in this District.

9.      Plaintiff filed a complaint with the Indianapolis Office of the Equal Employment Opportunity Commission ("EEOC") on October 3, 2016, alleging violations of Title VII of the Civil Rights Act of 1964, including violations of harassment, and reprisal.

10.     On April 26, 2017, Plaintiff received his "right to sue" letter which is attached as Exhibit A hereto.

11.     Having exhausted his administrative remedies and taken all actions necessary for the bringing of a civil lawsuit, Plaintiff now seeks judicial redress for his claims.

**GENERAL FACTUAL ALLEGATIONS**

12.     Brian was hired by Finance of America in May of 2014 as a loan officer.

13.     When he started, the company set a goal called "Top Gun" which challenged loan officers to average 5 loan closings per month for 6 months to become the first manager of the company, which at the time was growing rapidly.

14.     Brian was the only Finance of America employee at his office to hit that goal, and was promoted to manager in late 2014.

15.     During the second half of 2014, Brian closed more loans for Finance of America than anyone in the country.    As a loan officer, he made roughly $12,000 per month in commissions on top of his $2,000 per month base salary.

16.     Brian took over his own team in January 2015, comprised of 7-8 loan officers. His team out-performed every other team in the company, closing over thirty (30) loans per month throughout 2015.

17.     In late 2015, Brian began hiring additional members of his team and became the "go-to" person for training and performance.

18.     He successfully trained and mentored numerous inexperienced, underperforming, or newly hired loan officers.

19.     Brian's team continued to outperform more experienced and larger teams throughout most of 2016.

20.     He was paid a $50,000 per-year base salary, but in 2015, he made approximately $135,000 in commissions, bonuses, and incentives.

21.     Brian's supervisors touted him as a model employee, one time even bringing his commission check in cash and dumping it on the conference room table to show other employees

what focus and hard work looked like "in dollars and cents."

22.    He was told numerous times that he was the best manager in the company, and when Finance of America's Chief Executive Officer asked who was the best loan-closer in the country during a company conference in New York in 2015 – everybody knew it was Brian.

23.    On or about Saturday, July 9, 2016, Brian posted a message on his Facebook feed which criticized the "Black Lives Matter" movement.

24.    His post claimed that "all lives matter" and that people needed to take responsibility for their actions and not blame their plight on others, or words to that effect.

25.    His post also mentioned that people should be judged on their actions, not on the color of their skin, or words to that effect.

26.    Numerous other African-American employees frequently posted messages and photos relating to the group Black Lives Matter, including posts which suggested that Caucasian-Americans who committed crimes were treated better than their Africa-American counterparts and that police officers intentionally targeted African-Americans in police shootings.

27.    Finance of America did not have a policy on social media posts, or if they did have a policy, it was unknown to Brian and never enforced in its Carmel, Indiana office.

28.    When he arrived to work on Monday, July 11, 2016, the first day after posting the information contained in paragraphs 24 and 25 above, Brian went to lunch with one of his bosses and another manager, and upon his return was summoned to his boss, Tony Arnold's office where he was told that he was being suspended with pay.

29.    The reason was because of his Black Lives Matter Facebook post.  Finance of America indicated they would do a "deeper investigation" before deciding how to proceed with Brian and that he should not discuss the matter with anyone, but wait at home to be contacted.

30.     On Friday, July 15, 2016, Brian's supervisor came to his house and, in a recorded conversation, admitted that Brian's firing was not based upon his political beliefs, but instead suggested that Finance of America was concerned about upsetting minority employees in the Carmel office and felt the need to discipline Brian to satisfy African-American employees who were offended by his Facebook post.

31.     On or about July 22, 2016, Brian was told that he would no longer hold his Sales Manager position but that he could stay on as a loan officer because he "can't do what [he] did as a manager, but it is okay as a loan officer."

32.     He was assured that he would have a month off, paid, to take time to regroup and heal from recent surgery he had on his arm/bicep.

33.     He was specifically told that he would keep his manager base pay and receive a guarantee of $3,000 for the month of September while he was rebuilding a pipeline of loans to close upon being demoted to loan officer.

34.     Brian came back to work on August 16, 2016, to get some things and prepare to begin work when he returned the following Monday, August 22, 2016.

35.     He was at the office for about three hours, during which time numerous employees walked over to greet and encourage him.

36.     One of the employees who made the initial complaint against Brian, an African-American female and human resources officer, saw him while walking by and said "hey" while pushing a chair walking to a meeting.

37.     Brian replied "hey" and continued walking because he did not want to have a conversation with her given all that had transpired.

38.     The following day, Wednesday, August 17, 2016, Brian's supervisor texted him

and said that he was no longer allowed to come in the office and that he would talk to Brian later.

39.      When the supervisor called the following day, Thursday, August 18, 2016, he said that the company had to fire Brian because his returning to the office had caused an "uproar," and that they had gotten reports Brian was "ignoring others" and being "cold" and that he could no longer come into the office.

40.      That same day, Brian asked if he could work from home full-time, and his supervisor said that he could not and that he had been terminated.

## COUNT I
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42  U.S.C. § 2000e.** *et seq***.**

41.      Kane incorporates Paragraphs 1 through 40 as if fully set forth herein.

42.      Finance of America's conduct alleged at length herein constitutes discrimination based on race in violation of Title VII.  The stated reasons for Finance of America's conduct were not the true reasons, but instead, were pretext to hide its discriminatory animus.

WHEREFORE, Kane respectfully requests that the Court enter judgment in favor of Kane on Count I, grant it relief including compensatory damages, punitive damages, attorneys' fees and costs, and requests all other just and proper relief.

## COUNT II
**Reprisal for Engaging in Protected Activities**

43.      Kane incorporates Paragraphs 1 through 42 as if fully set forth herein.

44.      Finance of America's conduct as alleged above constitutes retaliation against Kane because he engaged in activities protected by Title VII.

45.      The states reasons for Finance of America's conduct were not the true reasons, but instead, were pretext to hide its retaliatory animus.

## COUNT III
### Hostile and Abusive Working Environment

46.    Kane incorporates Paragraphs 1 through 45 as if fully set forth herein.

47.    Finance of America's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII.  The states reasons for Finance of America's conduct were not the true reasons, but instead, were pretext to hide its retaliatory animus.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian Kane requests that the court award him:

A.    Reinstatement to the position of Team Leader, with all attendant back pay, benefits and other emoluments of such employment;

B.    the sum of $100,000 in compensatory damages suffered because of the discrimination and retaliation;

C.    the sum of $200,000 in punitive damages;

D.    costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

E.    other damages and further relief as deemed just.

### JURY DEMAND

The Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

Marietto V. Massillamany (#24643-49)
Christopher P. Jeter (#25905-49)
MASSILLAMANY & JETER LLP
11650 Lantern Road, Suite 204
Fishers, Indiana 46038
Telephone: (317) 432-3443
Facsimile: (317) 203-1012
Email:    Mario@mjattorneys.com
            Chris@mjattorneys.com

*Attorneys for Plaintiff Brian Kane*

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this 30th

day of June 2017, by depositing a copy of the same in the United States Mail, certified, prepaid,

and addressed to the following:


Finance of America Mortgage, LLC
ATTN: Registered Agent
135 North Pennsylvania Street
Suite 1610
Indianapolis, IN 46204

8