UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN KANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02266-JMS-TAB |
| | ) | |
| FINANCE OF AMERICA REVERSE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Plaintiff Brian Kane brings this action pursuant to Title VII of the Civil Rights Act of 1964, alleging that Defendant Finance of America Reverse, LLC ("Finance of America") discriminated against him because of his race following remarks he made on social media criticizing the Black Lives Matter movement. Mr. Kane further alleges that Finance of America retaliated against him for complaining about this discrimination, and that he was subjected to a hostile work environment. Presently pending and ripe for the Court's consideration are: (1) Finance of America's Motion for Judgment on the Pleadings, [Filing No. 20]; and (2) Mr. Kane's Motion for *Nunc Pro Tunc* Order Accepting His Opposition Motion as Timely, [Filing No. 25].

### I.
### MR. KANE'S MOTION FOR *NUNC PRO TUNC* ORDER

The Court first considers Mr. Kane's Motion for *Nunc Pro Tunc* Order[1] requesting that the Court accept his response to Finance of America's Motion for Judgment on the Pleadings as timely.

---

[1] The relief Mr. Kane seeks through his Motion for *Nunc Pro Tunc* Order is not the type that requires a *nunc pro tunc* order. The phrase *nunc pro tunc*, which translates to "now for then," "refers to situations in which the court's records do not accurately reflect its actions. When the error comes to light, the court corrects the file to show what actually happened." *Matter of Singson,* 41 F.3d 316, 318 (7th Cir. 1994). "A court may issue a *nunc pro tunc* order to correct the record so that it reflects what was actually done but never recorded due to clerical inadvertence."

Mr. Kane filed his Response in Opposition to Finance of America's Motion for Judgement on the Pleadings sixteen days late, and moves the Court, pursuant to Rule 6(b)(1)(B), to excuse his delay for good cause.

**A. Standard of Review**

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect is "at bottom an equitable [notion], taking account of all relevant circumstances surrounding the party's omission." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006). Courts consider "the danger of prejudice to [the nonmovant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd P'Ship*, 507 U.S. 380, 395 (1993)). However, context matters in determining excusable neglect, including whether the movant exhibited dilatory behavior. *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 593-94 (7th Cir. 2012).

A district court is granted discretion in accepting late filings, for it "best knows the impact the error has on the court's operation and calendar. It knows the attorney and his motives, the circumstances of the case and the judicial economy of excusing the neglect." *United States v. Brown*, 133 F.3d 993, 997 (7th Cir. 1998). Nonetheless, "district courts have an interest in

---

*States v. Taylor*, 841 F.2d 1300, 1308 (7th Cir. 1988). Mr. Kane's motion does not argue any clerical mistake or inadvertence on the Court's part; rather, he requests that the Court accept his untimely Opposition to Defendant's Motion for Judgment on the Pleadings. [Filing No. 23.] Accordingly, the Court will consider Mr. Kane's motion under Federal Rule of Civil Procedure 6(b)(1)(B), which allows the Court to accept a late motion for excusable neglect.

2

keeping litigation moving forward and…maintaining respect for set deadlines is essential to achieving that goal." *Blue*, 698 F.3d at 593-94 (citing *Spears v. City of Indianapolis*, 74 F.3d 153, 157-58 (7th Cir. 1996)).

**B. Background**

On January 23, 2018, Finance of America filed its Motion for Judgment on the Pleadings, a copy of which was electronically sent to Mr. Kane's counsel. [Filing No. 20.] Pursuant to Local Rule 7-1(c)(2)(A), Mr. Kane's response was due within fourteen days. Mr. Kane filed his Response in Opposition on February 22, 2018, sixteen days late. [Filing No. 23.] On March 1, 2018, Finance of America timely filed its Reply in Support of Motion for Judgment on the Pleadings. [Filing No. 24.] In its Reply, Finance of America requested that the Court disregard Plaintiff's untimely Response in Opposition. [Filing No. 24 at 1-2.] On March 6, 2018, Mr. Kane filed this Motion for *Nunc Pro Tunc* Order. [Filing No. 25.]

**C. Discussion**

Mr. Kane admits that his Response in Opposition was submitted sixteen days late and states that "[u]ndersigned counsel simply mis-calendared the deadline, and the responsibility for the delay is his alone." [Filing No. 25 at 2.] He argues, however, that the late filing poses no danger of prejudice to Finance of America because this case is only nine months old and still in the early stages of discovery. [Filing No. 25 at 2.] Mr. Kane also asserts that consideration of his delayed filing will not significantly impact the proceedings moving forward. [Filing No. 25 at 2.] Finally, Mr. Kane argues that "the delay does not represent the pattern of abuse or presence of bad faith which normally predicates judicial rebuke." [Filing No. 25 at 2.]

Finance of America argues that miscalculation of time cannot serve as a basis for excusable neglect. [Filing No. 27 at 1.] It claims that, even if Mr. Kane's counsel mistakenly believed his

3

response was due based upon the thirty (30) day deadline set forth in Indiana Trial Rule 56(C) rather than the rules of this Court, such an excuse does not constitute excusable neglect. [Filing No. 27 at 2.]

Although Finance of America's frustration with Mr. Kane's late response is understandable, the Court finds that, following the factors set forth by the Supreme Court in *Pioneer*, such delay is neglect that may be excused. There is little danger of prejudice to Finance of America if the Court accepts Mr. Kane's Response in Opposition, particularly given the fact that Finance of America has already filed its Reply. Further, this delay, while bothersome, was minimal and does not impact this case moving forward. Moreover, there is no evidence that Mr. Kane's delay was made in bad faith or that he has exhibited similar dilatory tactics in the past. The Court finds that, in the interests of justice, this case should be resolved on the merits, and allowing Mr. Kane's late submission furthers that objective. *See Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) (the interests of justice are best served by resolving cases on their merits). Pursuant to Rule 6(b)(1)(B), and for the reasons set forth above, Mr. Kane's Motion for *Nunc Pro Tunc* Order, [Filing No. 25], is **GRANTED**. Accordingly, the Court will consider Mr. Kane's Response in Opposition to Finance of America's Motion for Judgment on the Pleadings, [Filing No. 23].

## II.
### FINANCE OF AMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS

**A. Standard of Review**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the filing of the complaint and answer. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). In ruling on a motion for judgment on the pleadings, the Court may only consider the

complaint, answer, and any documents attached thereto as exhibits. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive the motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations in the complaint are accepted as true, but allegations that are legal conclusions are insufficient to survive the motion. *Adams,* 742 F.3d at 728. In other words, to survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

**B. Background**

The following facts are taken from Mr. Kane's Amended Complaint and accepted as true solely for the purpose of analyzing Finance of America's motion. [Filing No. 9.]

Finance of America hired Mr. Kane as a loan officer in May 2014 to work in its Carmel, Indiana office. [Filing No. 9 at 3.] In 2014, Mr. Kane was the first and only loan officer to hit a company goal of closing an average of five loans per month for six months, and was he promoted to manager later that year. [Filing No. 9 at 3.] Within his first year at Finance of America, he had closed more loans for the company than any employee. [Filing No. 9 at 3.] By January 2015, Kane managed his own team of seven to eight loan officers, which out-performed other teams at Finance of America in 2015. [Filing No. 9 at 3.] In addition to managing this team, he was relied

upon to mentor and train various loan officers and was touted by his supervisors as a "model employee." [Filing No. 9 at 3.] He was told repeatedly that he "was the best manager in the company." [Filing No. 9 at 4.]

On July 9, 2016, Mr. Kane, who is Caucasian, posted a message on his Facebook feed criticizing the Black Lives Matter movement. [Filing No. 9 at 4.] The post stated that "all lives matter" and suggested that people should take responsibility for their actions rather than "blame their plight on others." [Filing No. 9 at 4.] The post also stated that people should be judged by their actions, not their race. [Filing No. 9 at 4.] African-American employees of Finance of America frequently posted messages and photos related to Black Lives Matter, including posts suggesting that African Americans who have committed crimes are treated more harshly than their Caucasian counterparts and that police offers intentionally target African Americans in police shootings. [Filing No. 9 at 4.] These employees "were permitted to continue their employment without retribution." [Filing No. 9 at 1.] If Finance of America had a policy regarding social media posts, Mr. Kane did not know about it, and it was not enforced in the Carmel, Indiana office. [Filing No. 9 at 4.]

On July 11, 2016, the Monday after Mr. Kane posted the message on Facebook criticizing the Black Lives Matter movement, he was called to his boss' office where he was told he would be suspended with pay because of the post. [Filing No. 9 at 4.] Finance of America communicated to Mr. Kane that it wanted to conduct a "deeper investigation" into the matter before deciding how to proceed, and that he should not discuss the matter with anyone. [Filing No. 9 at 4.] That Friday, July 15, 2016, Mr. Kane's supervisor told him, in a recorded conversation, that he would need to be disciplined because Finance of America was concerned about upsetting African-American employees who were offended by the post, and that he was not being disciplined because of his

political beliefs.  [Filing No. 9 at 5.]  On July 22, 2016, Mr. Kane was informed that he was being demoted from a Sales Manager to a loan officer because he "can't do what [he] did as a manager, but it is okay as a loan officer," but that he would keep his manager base pay.  [Filing No. 9 at 5.] The company allowed him to take a paid month off to regroup after a recent surgery, and assured him that he would receive $3,000 for the month of September to allow him to rebuild his pipeline of loans.  [Filing No. 9 at 5.]

Mr. Kane was scheduled to return to work on August 22, 2016.  [Filing No. 9 at 5.]  He stopped into the office on August 16, 2016 to prepare some things before his official return, and while in the office was greeted and encouraged by several employees. [Filing No. 9 at 5.] He and one of the employees who had initially made the complaint against him passed one another and each said "hey."  [Filing No. 9 at 5.]  Because of what transpired in the past month, Mr. Kane did not wish to converse with the employee further and continued walking.  [Filing No. 9 at 5.]  The next day, Mr. Kane was told he could no longer come into the office. [Filing No. 9 at 5-6.]  Mr. Kane's supervisor called him the following day and terminated him, explaining that his return "had caused an 'uproar,' and that they had gotten reports [he] was 'ignoring others' and being 'cold.'" [Filing No. 9 at 6.]

Mr. Kane filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2016, alleging retaliation and harassment under Title VII.  [Filing No. 9 at 2.]  He received a right to sue letter from the EEOC on April 26, 2017, and initiated this lawsuit on June 30, 2017.  [Filing No. 1; Filing No. 9 at 2.]  Mr. Kane filed the operative Amended Complaint on September 11, 2017, asserting claims for race discrimination, retaliation, and hostile work environment under Title VII.  [Filing No. 9 at 6-7.]  He seeks reinstatement to the position

7

of Team Leader, compensatory and punitive damages, and attorneys' fees and costs. [Filing No. 9 at 7.]

**C. Discussion**

Finance of America moves for judgment on all of Mr. Kane's claims, arguing that his retaliation claim fails because he did not engage in any statutorily protected activity, he does not allege any facts to support a hostile work environment claim, and he pleads facts defeating his reverse discrimination claim. [Filing No. 21 at 5-10.] The Court addresses each argument in turn.

*1. Retaliation Claim*

In his Amended Complaint, Mr. Kane alleges that Finance of America retaliated against him because he complained that he was being treated in a discriminatory manner as compared to African American employees. [Filing No. 9 at 1.] Finance of America argues in its Motion for Judgment on the Pleadings that Mr. Kane's allegation that he was retaliated against for complaining that he was being treated in a discriminatory manner fails as a matter of law because Mr. Kane does not allege that he engaged in any protected activity, such as opposing race discrimination or filing a charge with the EEOC. [Filing No. 21 at 5-6.] Finance of America further contends that Mr. Kane's Facebook post is not a protected activity and does not constitute opposition to discriminatory conduct at the company. [Filing No. 21 at 6.]

Mr. Kane argues in response that it is a reasonable inference that he opposed his termination because he thought it was racially discriminatory. [Filing No. 23 at 3.] Additionally, he states that assuming he was opposed to Finance of America's reasoning behind his initial discipline would not be inconsistent with the allegations in his Amended Complaint. [Filing No. 23 at 3.] He notes that he alleges that Finance of America was "concerned about upsetting minority employees" and felt it needed to "discipline [him] to satisfy African-American employees who were offended by

8

his Facebook post," which supports his retaliation claim. [Filing No. 23 at 3.] Finally, he states that "he specifically pleads that he complained to Finance of America that 'numerous other employees frequently posted messages and photos relating to [Black Lives Matter]' but suffered no consequences," pointing to Paragraph 26 of his Amended Complaint. [Filing No. 23 at 3.]

In its reply, Finance of America argues that Mr. Kane points to statutorily protected activity he engaged in after he was terminated, but the activity must have taken place before his termination. [Filing No. 24 at 2.]

To succeed on a claim of retaliation, a party must "produce enough evidence for a reasonable jury to infer that [he] engaged in statutorily protected activity, that [defendant] took materially adverse action against [him], and that [his] protected activity caused the adverse action." *Reliford v. Advance/Newhouse Partnership*, 716 Fed. App'x. 551, 554 (7th Cir. 2018). "An employee's complaints about workplace treatment are statutorily protected when they assert that the employer has committed prohibited discrimination." *Id.*

At the pleadings stage, "[t]he protected activity must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). Mr. Kane's allegations can plausibly be read to allege that he engaged in protected activity. When he met with his supervisor, his supervisor admitted that his termination was because Finance of America was concerned about upsetting minority employees, and they disciplined Mr. Kane "to satisfy African-American employees who were offended by his Facebook post." [Filing No. 9 at 5.] This implies that Mr. Kane and his supervisor had a conversation regarding the reasons for Mr. Kane's termination, and that Mr. Kane complained that his termination was due to his race.

Additionally, Mr. Kane alleges that African-American employees posted about similar matters on Facebook, that they did not receive the negative treatment he experienced, that he

9

complained about this discrimination,[2] and that he faced adverse consequences as a result. [Filing No. 9 at 1.] While Finance of America is correct that Mr. Kane's actions taken after his termination cannot constitute a protected activity because there is no causation between those post-employment acts and the adverse consequences, Mr. Kane's allegations about his pre-termination complaints suffice to allege retaliation. The complaint "must contain something more than a general recitation of the elements of the claim," *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), and Mr. Kane provides just that. There is no confusion as to the specific conduct that is at the root of the Mr. Kane's claim. Mr. Kane has sufficiently alleged a retaliation claim under Title VII, and Finance of America's Motion for Judgment on the Pleadings is **DENIED** as to that claim.

  2. *Hostile Work Environment Claim*

Finance of America argues that Mr. Kane does not allege that "anyone intimidated, ridiculed, insulted, or otherwise harassed him," so his hostile work environment claim fails as a matter of law. [Filing No. 21 at 6.]

In response, Mr. Kane argues that he has alleged he faced a hostile work environment, including that he was suspended, demoted from his position, had his salary reduced, and ultimately was terminated. [Filing No. 23 at 4.] He contends that this "sudden change in fortune" was "sufficiently severe or pervasive to alter the conditions" of his employment and "create an abusive working environment." [Filing No. 23 at 4.] Mr. Kane also points to allegations that he was "forced to return to work and engage in conversation with the individual who had filed the initial

---

[2] As observed by Finance of America, Mr. Kane does not specifically state that he complained that African American employees posted messages and photos related to Black Lives Matter in connection with his retaliation claim or in the "General Factual Allegations" section of his Amended Complaint. However, he does make this allegation in the "Summary of Action" Section of the Amended Complaint.

10

complaint against him," and that "his decision to limit conversation with his accusers resulted in him being sent home again…." [Filing No. 23 at 4.]

In its reply, Finance of America argues that Mr. Kane has not alleged that anyone intimidated, ridiculed, insulted, or otherwise harassed him, and that his allegation that he was forced to return to work and engage in conversation with the individual who had initially complained about him is insufficient. [Filing No. 24 at 3-4 ("[Mr.] Kane was at the office for three hours and merely walked by one of the individuals who made the initial complaint against him… This is not conduct a reasonable person would find hostile or abusive").]

To succeed on a hostile work environment claim, a plaintiff must prove: "(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [race] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017). A violation of Title VII occurs when a "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fellers v. Brennan*, 699 Fed. App. 554, 555 (7th Cir. 2017) (citations and quotations omitted). Both the plaintiff and a reasonable person must perceive the environment as hostile or abusive. *Starnes v. Barrett & McNagny, LLP*, 2005 WL 1175118, *2 (N.D. Ind. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Mr. Kane first relies upon his suspension, demotion, and termination to support his hostile work environment claim. But a hostile work environment claim focuses on the conditions of employment and the environment an employee is subject to, not the consequences an employee faced. Those consequences more properly form the basis of Mr. Kane's retaliation and discrimination claims, not his hostile work environment claim. Second, Mr. Kane points to his

11

allegations that he "was forced to return to work and engage in conversation with the individual who had filed the initial complaint against him," and that even though he limited his conversation with that individual, he was sent home and ultimately terminated. [Filing No. 23 at 4.] This single incident does not come close to alleging that Mr. Kane was subject to a hostile work environment, even at the pleadings stage. Unlike Mr. Kane's retaliation and discrimination claims, the facts which could support a hostile work environment claim are already known to Mr. Kane because they are facts to which he would have been subjected. Going into the office one day and walking by the individual who had filed the initial complaint against him does not allege the type of pervasive conduct needed to support a hostile work environment claim. *See, e.g.*, *Fellers*, 699 Fed. App. at 556 (hostile work environment claim failed where plaintiff "was not physically threatened, nor was the offensive conduct frequent – it occurred on a single day"). Finance of America's Motion for Judgment on the Pleadings is **GRANTED** as to Mr. Kane's hostile work environment claim.

### 3. *Race Discrimination Claim*

In its Motion for Judgment on the Pleadings, Finance of America argues that Mr. Kane pleads facts indicating that there are no similarly situated non-white employees that were treated more favorably than him, and that these allegations defeat his race discrimination claim. [Filing No. 21 at 7.] Finance of America contends that Mr. Kane has failed to provide any direct evidence of discrimination, and that under the indirect method Mr. Kane must make a *prima facie* showing of discrimination in order to demonstrate that reverse race discrimination has occurred. [Filing No. 21 at 7.] Finance of America argues that Mr. Kane fails to meet this burden because he does not allege background circumstances showing reverse discrimination, nor does he show that Finance

of America treated similarly situated employees outside of his class more favorably. [Filing No. 21 at 8.]

In response, Mr. Kane argues that he has alleged sufficient facts under the direct method of proof, including that he recorded conversations with his supervisor in which his supervisor articulated "ulterior reasons for his firing." [Filing No. 23 at 6.] Mr. Kane also contends that it is "not a stretch to infer that [his] demotion and firing, given his stellar performance until the time of the Facebook post, were of suspicious timing." [Filing No. 23 at 6.] As for discrimination under the indirect method, Mr. Kane argues that it is difficult to allege the background circumstances related to other employees without having conducted discovery, and that he has alleged "fishy" circumstances – including being "a high-performing employee who, after posting a critical comment directed at an African-American political group similar to those made by African-American employees, was fired" – that are enough to give rise to a cognizable claim at the pleadings stage. [Filing No. 23 at 7.]

Finance of America reiterates its arguments in its reply. [Filing No. 24 at 4.]

To ultimately prevail on a reverse race discrimination claim, Mr. Kane must show that: "(1) background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly

13

situated individuals who are not members of his protected class."[3] *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (citation and quotation omitted). At the pleadings stage, however, Mr. Kane must only meet the minimal pleading standards. *Tamayo*, 526 F.3d at 1084. In other words, Mr. Kane's discrimination claim will survive so long as he provides sufficient factual allegations for the Court to "reasonably infer" that the unlawful discrimination was plausible. *Ashcroft*, 556 U.S. at 678. The Court finds that Mr. Kane meets this standard.

First, Mr. Kane sufficiently alleges background circumstances showing the plausibility of reverse discrimination. Specifically, he has provided enough background information, including his stellar job performance and his purported complaints about discriminatory conduct, to plausibly suggest that there was something "fishy" about his termination. Second, he has alleged that he was meeting Finance of America's legitimate performance expectations and, in fact, was excelling. Third, he alleges that he suffered an adverse employment action when he was terminated. Finally, he alleges that he was treated less favorably than some African American employees because he alleges that several African American employees posted messages and photos related to Black Lives Matter and were not disciplined.

Drawing all reasonable inferences from the Amended Complaint in Mr. Kane's favor, the Court finds that Mr. Kane has pled sufficient facts to support his race discrimination claim, and

---

[3] Both parties distinguish between "direct" and "indirect" methods of proof. However, the Seventh Circuit has rejected distinguishing between evidence of discrimination in this manner, instructing that "[i]nstead, all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 766 (7th Cir. 2016). *Ortiz* clarifies that the decision to abolish this distinction does not hinder the application of the burden shifting framework outlined above, which is sometimes referred to as "indirect" evidence of employment discrimination. *Id.* Additionally, the methods of proof come into play in the summary judgment context, and not at the pleadings stage.

has not pled facts defeating that claim. Accordingly, Finance of America's Motion for Judgment on the Pleadings is **DENIED** as to Mr. Kane's race discrimination claim.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Kane's Motion for *Nunc Pro Tunc* Order Accepting His Opposition Motion as Timely, [25]. The Court also **GRANTS IN PART** Finance of America's Motion for Judgment on the Pleadings as it relates to Mr. Kane's hostile work environment claim, and **DENIES IN PART** the motion as it relates to Mr. Kane's retaliation and race discrimination claims. [20.] Mr. Kane's hostile work environment claim is **DISMISSED WITH PREJUDICE**, but no partial final judgment shall issue at this time. Mr. Kane's retaliation and race discrimination claims remain pending, and the Court requests that the Magistrate Judge confer with the parties regarding a possible resolution of this matter short of trial.

Date: 4/30/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**